UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAURIE WEDIN and THOMAS R. UTZIG, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 23-CV-0348-CVE-SH ) |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY and SHOEMAKE AGENCY, LLC, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is plaintiffs Laurie Wedin and Thomas R. Utzig's motion to remand (Dkt. # 30). This case arises out of an insurance dispute as to coverage for alleged damage to plaintiffs' roof. On May 19, 2023, plaintiffs filed a petition in the District Court of Rogers County, Oklahoma, alleging numerous claims for relief against Allstate and Shoemake Agency, LLC (Shoemake). On August 12, 2023, Allstate Vehicle and Property Insurance Company's (Allstate) timely removed the case to federal court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting that "[Shoemake's] citizenship [as an Oklahoma-based company] is immaterial because [it] is a fraudulently joined party against whom [p]laintiffs do not have any possibility of recovery." Dkt. # 2, at 6 (internal quotations omitted)[1]. On September 11, 2023, plaintiffs timely filed a motion to remand the case to state court. Dkt. # 30. Allstate responded on October 2, 2023 (Dkt. # 31) and plaintiffs replied on October 16, 2023 (Dkt. #32).

---

[1] Page two of defendant's notice of removal is duplicated, however, the Court will continue to refer to pages in the filing herein by the CM/ECF number.


I.

The following allegations are from the petition in the underlying action: plaintiffs and Shoemake are citizens of Oklahoma, and Allstate is a foreign insurer licensed to do business in Oklahoma. Dkt. # 2-1, at 1, 2. Plaintiffs engaged Scott Shoemake, an agent of Allstate who operates Shoemake, to help them procure a homeowner's insurance policy. Plaintiffs "specifically requested a policy that would fully replace [their] roof in the event of a loss, without exclusion of any weather-related losses." Id. at 2. They insisted for "Shoemake to obtain for them full replacement cost coverage for their roof above and beyond what the base policy provided." Id. "Shoemake assured [p]laintiffs [that] Shoemake could obtain the requested coverage [but that] the only way to obtain the coverage they requested was by purchasing a [r]oof [s]urface [e]xtended [c]overage [e]ndorsement." Id. Shoemake specifically advised plaintiffs that the increased premium for this endorsement would be worth the additional cost "because it provided coverage that would *fully replace* their roof in the event of a covered loss, without conditions or exclusions." Id. (emphasis in original).

Plaintiffs allege that in order for them to qualify for the roof endorsement, Shoemake, as the "first line of underwriting" for Allstate, was required to inspect and verify the roof's conditions and then calculate coverage using Allstate's valuation software. Id. at 3-4. "With this, the roof's age, condition, and predominate surface materials were all factors that not only affected [p]laintiffs' eligibility to obtain replacement cost coverage for [p]laintiffs' roof, but also dictated the calculation of the increased premium associated with this type of coverage." Id. at 4. Plaintiffs allege that Shoemake "expressly conditioned [their] insurance coverage options on said inspection" and that "neither Shoemake nor Allstate advised [them] at any time that [their] roof was ineligible" for the

replacement cost coverage. Id. Instead, Shoemake calculated the replacement cost limits "as if plaintiffs' home was in perfect condition" and "plaintiffs had no input regarding the amount of coverage Shoemake independently selected and calculated." Id. Plaintiffs allege that Shoemake represented to them that he "procured coverage that would fully restore the [i]nsured [p]roperty and roof to its pre-loss condition in the event of damage."

On May 21, 2022, plaintiffs' home was damaged by wind and hail from a severe storm. Id. at 7. Plaintiffs submitted a timely claim to Allstate, and on May 27, 2022, Allstate sent a claim acknowledgment letter to plaintiffs. Id. On May 31, 2022, an independent adjuster from Hancock Claims Consultants, under contract with Allstate, inspected plaintiffs' roof and informed them that their property suffered significant wind and hail damage, and there was no problem with their claim. Id. Plaintiffs then received a phone call from Allstate denying the claim because of improper roof installation. On June 7, 2022, Allstate, through a different claims adjuster, prepared a $156.25 estimate based on an actual cost value basis "for water damage sustained to [p]laintiffs' kitchen, family room, and bath." Id. at 8. "[D]espite conceding water had in fact caused damage to the interior of their home, Allstate's estimate was limited to sealing and painting over wet sheetrock" and "failed to include any damage to [p]laintiffs' roof for wind and/or hail." Id. That same day, plaintiffs received a form letter from Allstate denying the claim in its entirety; in the letter, Allstate denied that the roof was damaged, and attributed any interior damage to defective construction. Id. Allstate claimed that the total damage sustained was less than plaintiffs' deductible. Dkt. # 11, at 5.

Plaintiffs allege that they disagreed with Allstate's assessment of damages and damage estimate and obtained an independent estimate from Sky Diamond Adjusting, LLC, on June 30,

3

2022. Dkt. # 2-1, at 8. An agent of Allstate allegedly called plaintiffs and stated "[s]ince you have contacted a public adjuster implying that the claim was closed, do what you have to do." Id. Plaintiffs allege that they were "shocked" by the phone call and did not know how to respond. Id. On July 13, 2022, Sky Diamond provided a replacement cost damage estimate for the roof totaling $20,914.09 and informed Allstate that plaintiffs had sustained additional interior damages to their residence that could be addressed at a joint on-site inspection. Id. at 8-9. On July 19, 2022, an Allstate claims adjuster responded by sending a copy of the denial letter. Id. at 9.

On May 19, 2023, plaintiffs filed a petition in state court alleging claims of breach of contract and breach of the duty of good faith and fair dealing against Allstate. Id. at 12-13. Plaintiffs also alleged claims of negligent procurement of insurance and constructive fraud and negligent misrepresentation against both Allstate and Shoemake. Id. at 18, 24. On August 12, 2023, Allstate removed the case to this Court on the basis of diversity jurisdiction. Dkt. # 2. In the notice of removal, Allstate asserts that plaintiffs fraudulently joined Shoemake to defeat diversity and therefore removal is proper. Id. at 6-9. On September 11, 2023, plaintiffs moved to remand the case to state court (Dkt. # 30).

## II.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005). The party

invoking federal jurisdiction has the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case."); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). "The Court resolves doubtful cases in favor of remand." McDonald v. CSAA Ins. Exch., No. CIV-16-336, 2017 WL 887108, at *2 (W.D. Okla. Mar. 6, 2017) (citing Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982)).

A defendant may remove a case to federal court if the case is one over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." The Supreme Court has construed § 1332 to require complete diversity, and the "plaintiff must meet the requirements of the diversity statute for *each* defendant . . . ." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original). The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional factual allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. DeSmet v. CSAA Ins. Exch., No. 19-CV-0624, 2019 WL 7284769, at *2 (N.D. Okla. Dec. 27, 2019) (citing Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). If a defendant can

show that all non-diverse defendants were fraudulently joined, the remaining parties will be completely diverse and the federal court has subject matter jurisdiction. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F. 2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "After resolving disputed questions of fact and ambiguities in favor of the plaintiffs, the court then determines whether they have 'any possibility of recovery against the party whose joinder is questioned.'" Asbury v. N. Star Mut. Ins. Co., 2015 WL 588607, at *1 (W.D. Okla. Feb. 11, 2015) (quoting Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000); Hart, 199 F.3d at 246). "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006).[2] "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Id. Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine

---

[2] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882.

Allstate has not shown that plaintiffs "have no possibility of recovering from Shoemake." Dkt. # 31, at 11. Allstate argues that plaintiffs fail to factually support a claim for negligent procurement of insurance against Shoemake, and contend that Oklahoma law does not recognize a claim for constructive fraud or negligent misrepresentation against insurance agents. Under Oklahoma law, however, "[a]n agent "has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Swickey v. Silvey Cos., 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on 'specialized knowledge [about] the terms and conditions of insurance policies generally.'" Rotan v. Farmers Ins. Group of Cos., 83 P.3d 894, 895 (Okla. Civ. App. 2003) (quoting Swickey, 979 P.2d at 269). "Although the duty does not extend to general requests to 'provide an adequate amount of coverage,' Cosper v. Farmers Ins. Co., 309 P.3d 147, 149 (Okla. Civ. App. 2013), or to 'advise an insured with respect to his insurance needs,' Rotan, 83 P.3d at 895, agents must offer coverage for *needs disclosed by the insured*." Sang v. Smith, No. 19-CV-00686, 2020 WL 6472683, at *4 (N.D. Okla. May 19, 2020) (emphasis in original) (cleaned up).

Given the above standard, the Court must evaluate whether, construing the facts in the light most favorable to plaintiffs, Allstate has met its burden in establishing that plaintiffs have no possibility of recovery against Shoemake. The Court finds that Allstate is unable to meet this "heavy burden." Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013). Allstate argues that plaintiffs received the policy they requested–full replacement cost coverage–and because Shoemake acquired

that policy for plaintiffs, he could not have negligently procured insurance. However, plaintiffs allege that they explicitly requested replacement cost coverage that, "given Oklahoma's extreme weather," would "fully replace [p]laintiff's roof in the event of a loss, without exclusion of any weather-related losses." Dkt. # 2-1, at 2. Contrary to Allstate's argument, such a request is not a general request for full coverage or adequate protection; rather, this is a specific coverage need disclosed by plaintiffs to Shoemake. Moreover, plaintiffs allege that Shoemake told them that the only way they could obtain the coverage they sought was by purchasing the roof endorsement, which carried a higher premium, and that the additional cost was worthwhile because it would *fully replace* their roof in the event of a loss. Id. at 2. To qualify for the roof endorsement, plaintiffs allege that Shoemake had to verify that the roof was in proper condition to satisfy Allstate's underwriting and calculation guidelines. Id. at 3. Shoemake allegedly calculated the policy's replacement cost limits as if plaintiffs' home was in perfect condition, utilizing information from his inspection and Allstate's valuation software, and plaintiffs claim they had no input regarding the amount of coverage Shoemake independently selected. Id. at 5. Plaintiffs allege that Shoemake was independently involved in determining the coverage offered to them. See Misner v. State Farm Fire & Co., No. CIV-14-873, 2015 WL 789160, at *2 (W.D. Okla. Feb. 24, 2015). Construing these alleged facts in the light most favorable to the plaintiffs, plaintiffs have sufficiently "alleged they disclosed their specific insurance needs for the insured property" and that Shoemake "failed to use reasonable skill, care, and diligence" in his calculation of the applicable replacement cost coverage amount. Sang, 2020 WL 6472683, at *4. Therefore, "it cannot be said that there is *no possibility* that the plaintiffs will be able to establish a cause of action for negligent procurement." Id. (emphasis in original).

8

Defendants argue that these facts are analogous to this Court's prior decision in <u>Gellner v. Progressive Northern Insurance Co.</u>, No. 21-CV-0401, 2021 WL 5789146 (N.D. Okla. 2021). This argument is flawed as the facts in that case are inapposite to those here. There, the insurer denied the insureds' claim for property damage to their boat after they claimed it suffered a collision. <u>Id.</u> at *1. The insurers found that the damage was caused by wear and tear, not a collision, and was not covered by the policy. This Court found that there was no "dispute that plaintiffs' claim would be covered if plaintiffs could establish that damage to the boat was caused by a collision." <u>Id.</u> at *3. Defendants argue, similarly, that Allstate denied plaintiffs' claim due to improper installation of plaintiffs' roof and mild–not severe–hail damage, and not due to the amount of coverage provided by the policy. "This argument, [however,] presumes that Allstate accurately investigated and evaluated the [plaintiffs] claim." <u>Sang</u>, 2020 WL 6472683, at *4. Here, plaintiffs allege that the specific policy procured for them by Shoemake–which included a roof endorsement and replacement cost limits calculated "as if [p]laintiffs' home was in perfect condition"–was predicated on Shoemake accurately inspecting their insured property. Dkt. # 2-1, at 5. Plaintiffs allege, essentially, that either (1) Shoemake did not use reasonable skill, care, and diligence in procuring their insurance policy by failing to properly assess the roof's conditions, therefore improperly driving up the cost of their premiums, or, that (2) Shoemake did procure the correct policy for the condition of plaintiffs' roof but that Allstate then breached their contract and acted in bad faith when assessing their insurance claim. The former allegation presents a viable avenue for recovery against Shoemake, and advances a factual dispute that this Court cannot consider on a motion to remand. "The doctrine of fraudulent joinder is not a basis to pre-try the merits of a plaintiff's claims against a resident defendant." <u>Misner</u>, 2015 WL 789160, at *2.

9

Because Allstate is unable to meet its burden to show fraudulent joinder as to plaintiffs' negligent procurement of insurance claim against Shoemake, the Court need not reach plaintiffs' constructive fraud and negligent misrepresentation claim against Shoemake. Sang, 2020 WL 6472683, at *3 ("Even if plaintiff[s] were precluded from pursuing all [their] claims save one in state court, a remand would be necessary.") (internal quotations and alterations omitted) (quoting Batoff v. State Farm Ins. Co., 977 F.2d 848, 851-53 (3d Cir. 1992)). Accordingly, the Court finds that the claims against Shoemake do not fail as a matter of law and that Allstate has not met its burden to establish that Shoemake was fraudulently joined. As a result, the Court finds that Shoemake's citizenship should not be disregarded. Because plaintiffs and the properly joined defendants are not completely diverse, the requirements for diversity jurisdiction were not met at the time this case was removed to federal court. Therefore, the Court lacks subject matter jurisdiction over this case, and the case must be remanded to state court.

**IT IS THEREFORE ORDERED** that the Court lacks subject matter jurisdiction over this case, and the motion to remand (Dkt. # 30) is **granted**. The Court Clerk is directed to **remand this case to Rogers County District Court.**

**DATED** this 16th day of October, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE